# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: ) | |
| ) | **JUDGE RICHARD L. SPEER** |
| Timothy/Pamela O'Connor ) | |
| ) | Case No. 08-36756 |
| Debtor(s) ) | |
| ) | |

## DECISION AND ORDER

This cause comes before the Court on two related matters: (1) The Debtors' Motion for Contempt Against the City of Toledo, Department of Public Utilities; and (2) the Debtors' Objection to the Claim of the City of Toledo, Department of Public Utilities. (Doc. Nos. 54 & 70). On each of these matters, the City of Toledo filed a response. (Doc. Nos. 56 & 70). For these matters, the Court held two hearings, at which time the Parties presented evidence to the Court. (Doc. Nos. 63, 64, 77 & 78). After considering the evidence presented, together with the respective arguments made by the Parties, the Court finds, for the reasons set forth below, that the Debtors' Motion for Contempt should be Granted, and that the Debtors' Claim Objection should be Sustained.

## FACTS

On December 12, 2008, the Debtors, Timothy and Pamela O'Connor, filed a petition in this Court for Relief under Chapter 13 of the United States Bankruptcy Code. (Doc. No. 1). With their bankruptcy filing, the Debtors submitted a proposed Chapter 13 plan. (Doc. No. 4). Among its terms, the Debtors' plan provided that property of the estate shall revest in the Debtors upon confirmation. *Id.* This plan was confirmed by the Court on April 2, 2009. (Doc. No. 22).

At the time they filed their petition for relief, the Debtors obtained water service from the City of Toledo, Department of Public Utilities (hereinafter the "City of Toledo"). To this day, the Debtors continue to receive their water service from the City of Toledo. For the water service, the City of

In re: Timothy/Pamela O'Connor
Case No. 08-36756

Toledo bills the Debtors on a quarterly basis, with the quarterly invoices sent to the Debtors charging between $200.00 and $400.00.

When they filed their petition for bankruptcy relief, the Debtors did not disclose the City of Toledo as a creditor in their case; nor was the City of Toledo provided for in the Debtors' Chapter 13 plan. The circumstances in this regard show that, at the time the Debtors sought bankruptcy relief, they were current on their obligation to the City of Toledo and that afterwards the Debtors continued to pay the City of Toledo in the ordinary course. (Doc. No. 77, Ex. C-III).

In 2010, the City of Toledo discovered that, because of incorrect meter readings, it had been undercharging the Debtors for its water service. To correct the deficiency, the City of Toledo installed a new water meter at the Debtors' residence. The initial installation of the meter, however, was defective – it was installed backwards – and had to be corrected. In October of 2010, once the new water meter had been correctly installed, the City of Toledo sent to the Debtors a revised water bill for the sum of $2,033.37. (Doc. No. 77, Ex. C-IV.). After receiving the revised water bill, the Debtors contacted the City of Toledo to arrange a procedure for payment. (Doc. No. 77, Ex. B).

On November 1, 2010, the Debtors filed a motion to modify their Chapter 13 plan. (Doc. No. 33). As the basis for their Motion, the Debtors set forth that they "have incurred additional medical bills and a disputed post-petition water bill, out of necessity, for which an Amendment is being filed herewith." *Id.* Consistent with this statement, the Debtors then amended their bankruptcy schedules so as to include the City of Toledo as an unsecured creditor. (Doc. No. 34). The Debtors listed the amount of the unsecured claim held by the City of Toledo as $2,033.37. On November 1, 2010, the Attorney for the Debtors, Gordon Barry, certified that he sent notice of the Debtors' amended plan

Page 2

In re: Timothy/Pamela O'Connor
Case No. 08-36756

and schedules to the City of Toledo, utilizing the address the City of Toledo provides on the invoices it sends to the Debtors for the remittance of payment.[1] (Doc. No. 33 & 34).

On January 5, 2011, the Debtors personally informed the City of Toledo that they had filed for bankruptcy relief. *Id.* One week later, Debtors' attorney, Gordon Barry, contacted the City of Toledo at which time Attorney Barry informed the City of Toledo that it had amended the Debtors' Chapter 13 plan. *Id.* On February 17, 2011, the City of Toledo formally filed a notice of appearance in the Debtors' bankruptcy case. (Doc. No. 51).

On February 1, 2011, the Court entered an order, confirming the Debtors' amended Chapter 13 plan. (Doc. No. 43). In this Order it was first provided that "commencing November, 2010, the Debtors' Plan will include the additional bills listed in their Amendment filed November 1, 2010." *Id.* The Order then further provided that "new creditors shall have ninety (90) days from the date of this Order to file their proof of claim." *Id.*

On April 21, 2011, the City of Toledo filed a proof of claim in the amount of $679.05. Later, on November 14, 2011, this claim was amended to the amount of $654.05. (Cl. No. 20). As consideration for this claim, the City of Toledo set forth that it constituted water services extended to the Debtors for the prepetition period of June 14, 2008 through December 12, 2008. *Id.* On November 7, 2011, the Debtors objected to the amended proof of claim, "for the reason that they believe they do not owe it." (Doc. No. 70).

After their amended plan was confirmed by the Court, the Debtors continued to receive billing statements from the City of Toledo, demanding that the Debtors pay all outstanding sums due on their water bill. These statements included the following correspondences:

---

[1] Department Of Public Utilities, 420 Madison Ave Ste. 100, Toledo, Ohio 43604.

Page 3

>A water bill dated March 2, 2011, showing an amount due of $3,129.94.

>A water bill dated March 4, 2011, showing an amount due of $1,709.26.

>A water bill dated March 15, 2011, showing a current charge of $229.64, and a total amount due of $1,938.90.

>On April 11, 2011, a "Reminder Notice" was sent to the Debtors, seeking to collect the sum of $1,794.72.

>On April 21, 2011, a "Final Notice Prior to Disconnection" was sent to the Debtors, demanding that they pay the sum of $1,794.72 by May 3, 2011.

>On September 7, 2011, a "Reminder Notice" was sent to the Debtors, seeking to collect the sum of $1,809.94.

(Doc. No. 63. Ex. 7).

### DISCUSSION

Before this Court is the Debtors' Motion for Contempt against the City of Toledo and the Debtors' Objection to the Claim of the City of Toledo. The Debtors' Motion for Contempt alleges the City of Toledo violated the automatic stay of 11 U.S.C. § 362(a) and that the City of Toledo has disregarded this Court's order confirming the Debtors' amend Chapter 13 plan. Matter concerning a violation of the automatic stay and orders regarding the confirmation of a plan are deemed to be core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(G)/(L). In addition, a matter concerning the allowance or disallowance of a claim against the estate is deemed to be core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Accordingly, as all the matters before the Court are "core proceedings," this Court has jurisdiction to enter final orders and judgments in this matter. 28 U.S.C. § 157(b)(1).

In re: Timothy/Pamela O'Connor
Case No. 08-36756

## Motion for Contempt

The first matter before the Court is the Debtors' Motion to hold the City of Toledo in Contempt. At its center, this Motion is predicated on a number of billing statements and notices regarding the termination of service issued by the City of Toledo after the Debtors' amended Chapter 13 plan had been confirmed by the Court. According to the Debtors, the issuance of these statements/notices is actionable because they seek to recover amounts owed on their water bill which had been included in their amended Chapter 13 plan.

Liability against the City of Toledo is predicated on two legal grounds: (1) a violation of the automatic stay as set forth in 11 U.S.C. § 362(a); and (2) contempt, with the Debtors alleging that the City of Toledo disregarded this Court's Order confirming the Debtors' amend Chapter 13 plan. (Doc. No. 54). Beginning with automatic stay, each of these grounds is now addressed.

Pursuant to § 362(a) of the Bankruptcy Code, an automatic stay arises upon the commencement of a bankruptcy case. The stay arises as a matter of law; no formal notice or service of process is required for the stay to have effect. 11 U.S.C. § 362(a); *Smith v. First America Bank, N.A.*, 876 F.2d 524, 526 (6th Cir.1989). The stay is effective against "all entities," including municipalities such as the City of Toledo. 11 U.S.C. § 362(a), § 101(15) (defining entity to include a "governmental unit."); 11 U.S.C. § 101(27) (defining a "governmental unit" to include "a municipality").

A creditor who violates the automatic stay may be held in contempt. Furthermore, it is provided in § 362 that an individual debtor injured by a creditor's willful violation of the stay is entitled to an award of damages. 11 U.S.C. § 362(k)(1). Such an award must include an assessment against the creditor of a debtor's actual damages, including costs and attorney fees, and in appropriate circumstances, it may include an award of punitive damages. *Id*.

Page 5

The scope of the stay is broad and will operate to enjoin essentially any act, whether the commencement or continuation thereof, by a creditor to collect on its claim. *In re Dorsey*, 373 B.R. 528 (Bankr. N.D.Ohio 2007). To this end, billing statements and termination notices, such as that sent to the Debtors by the City of Toledo, have been found to run afoul with the automatic stay. *Wcislak v. City of Perrysburg (In re Wcislak)*, 440 B.R. 779, 780 (Bankr. N.D.Ohio 2010). Notwithstanding, it is questionable whether any stay violation exists in this particular matter.

First, under § 362(a) eight types of acts are enjoined by the stay. It is apparent, however, that six of the acts enjoined by the stay cannot be implicated in this matter as their scope is limited to prepetition claims. In this respect, the billing and termination statements which give rise to the alleged violation of the automatic stay appear to stem mostly, if not entirely, from postpetition water usage by the Debtors.

The remaining two types of acts proscribed by the stay of § 362(a) protect estate property. By definition, therefore, this protection operates prospectively, toward postpetition acts of creditors, given that a bankruptcy estate only arises when a case is commenced. 11 U.S.C. § 541(a). Of the two types of protections afforded to estate property, the Debtors, although not specifically citing the Court to the provision, necessarily rely on the prohibition set forth in 11 U.S.C. § 362(a)(3).

Section 362(a)(3) operates to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(3). In a Chapter 13 case, a debtor's postpetition wages are property of the estate. 11 U.S.C. § 1306(a)(2). Consequently, if a creditor, such as the City of Toledo, sends billing statements and threatens to discontinue services for a Chapter 13 debtor, such acts may run afoul with § 362(a)(3) where the creditor is seeking to have its claim paid from a debtor's postpetition wages. *In re Steenstra*, 280 B.R. 560, 567 (Bankr. D.Mass.2002).

In re: Timothy/Pamela O'Connor
Case No. 08-36756

Yet, even assuming the collection activity undertaken by the City of Toledo can be construed as acts to obtain possession of the Debtors' postpetition wages, an impediment still exists to finding that the City of Toledo violated the automatic stay. Consistent with § 1327(b) of the Code,[2] the Debtors' plan, as confirmed by the Court, provided that property of the estate shall revest in the Debtors upon confirmation.

It, therefore, follows that when their plan was confirmed by the Court, any wages earned thereafter by the Debtors no longer became property of their bankruptcy estate, thus potentially depriving such wages of the protections afforded by the automatic stay. Courts, in this regard, have developed a number of different approaches to address the interplay between the revesting of estate property in a debtor under § 1327(b) and its effect on postpetition wages received by the debtor. *See Woodard v. Taco Bueno Rest., Inc.*, 2006 WL 3542693 (N.D.Tex. December 8, 2006) (discussing four interpretations and offering a fifth).

Resolution of this issue, however, was neither addressed by the Parties, nor does it need to be determined at this time. This is because even if it is assumed that the City of Toledo did not commit a stay violation, its actions still violated this Court's Order confirming the Debtors' amended plan of reorganization. *See Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439, 444 (1st Cir. 2000) (where an unresolved legal issue is implicated, a court may decline to address it when an alternative remedy is available).

Section 1327(a) of the Bankruptcy Code provides that the "provisions of a confirmed plan *bind* the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

---

[2]
(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

Page 7

In re: Timothy/Pamela O'Connor
Case No. 08-36756

(emphasis added). This binding effect of a confirmed plan applies equally to any subsequent modifications made to a plan, with § 1329(b)(2) of the Code providing that the "plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved."

In this matter, therefore, the terms of the Debtors' amended plan, as approved by the Court, were binding on the City of Toledo. These terms provided, *inter alia*, that the additional obligations, as listed in their amended schedules filed on November 1, 2010, including an unsecured obligation of $2,033.37 owed to the City of Toledo, would be included in the Debtors' Chapter 13 plan.

Obligations included in a confirmed plan may be paid over the life of the plan in an amount provided for in the plan. 11 U.S.C. § 1322(b)(5); § 1325(b)(1). *See also United Student Aid Funds, Inc. v. Espinosa,* —— U.S. ——, 130 S.Ct. 1367, 1373, 176 L.Ed.2d 158 (2010) ("Chapter [13] permits individual debtors to develop a plan to repay all or a portion of their debts over a period of time specified in the plan."); *In re Rathe,* 114 B.R. 253, 257 (Bankr .D.Ida.1990) ("the purpose of a Chapter 13 Plan is to allow a debtor to pay arrears during the pendency of the plan while continuing to make payments at the contract rate.").

Consequently, once the Debtors' amended plan was confirmed by the Court on February 1, 2011, the Debtors were entitled to pay their arrearage of $2,033.37 to the City of Toledo over the remaining life of their Chapter 13 plan. The billing statements and termination notices sent to the Debtors after March 2, 2011, however, sought the immediate and full payment of this arrearage, thus necessarily causing such correspondences to run afoul with the Debtors' amended plan and this Court's order of confirmation.

A creditor, including a governmental entity, may be held in civil contempt for violating the provisions of a confirmed plan and the court's order of confirmation. *In re Rodriguez,* 367 Fed.Appx. 25, 28 (11th Cir. 2010); *United States v. Holden,* 258 B.R. 323, 327-28 (D.Vt.2000). *See also Pertuso*

Page 8

In re: Timothy/Pamela O'Connor
Case No. 08-36756

*v. Ford Motor Credit Co.*, 233 F.3d 417, 423 fn.1 (6th Cir. 2000) (section 105 of the Bankruptcy Code undoubtedly vests bankruptcy courts with statutory contempt powers). In opposition to a finding of civil contempt, the City of Toledo made a number of different points, with the gravamen of its position centering on two matters: (1) A lack of notice; and (2) a lack of consent to the terms of the Debtors' amended plan. Each of these positions, however, must be rejected.

It is a fundamental aspect of constitutional due process that, before a party's rights may be compromised, notice and an opportunity to be heard must be afforded to the affected party. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464 (1980). From this, it has followed that a creditor, whose rights are impacted by a debtor's chapter 13 case, but who does not have notice of the pendency of the bankruptcy case, has been denied their constitutional right of due process, and thus is not subject to the binding effect of a Chapter 13 plan under § 1327(a). *See e.g., In re Harris*, 293 B.R. 438, 441 (Bankr. N.D.Ohio 2003) ("provisions of a confirmed Chapter 13 plan are not binding on creditors to the extent that the confirmation order violates a creditor's due process rights.").

Constitutional due process, and by extension the applicability of § 1327(a), however, does not require that a creditor receive actual notice of a debtor's pending bankruptcy. *Jones v. Flowers*, 547 U.S. 220, 225, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) ("[D]ue process does not require actual notice . . . "). Instead, a creditor's due process rights will be satisfied if the notice provided to the creditor was reasonably calculated under all circumstances to apprise the creditor that its rights may be affected so as to afford the creditor time to respond. *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950). So long as this standard is met, a creditor is bound by the terms of a confirmed Chapter 13 plan.

The burden of establishing that a creditor received adequate notice of a Chapter 13 case rests with the debtor. *Massa v. Addona (In re Massa)*, 187 F.3d 292, 296 (2nd Cir.1999). For their burden,

Page 9

In re: Timothy/Pamela O'Connor
Case No. 08-36756

the Debtors fully acknowledge that when their bankruptcy case was commenced, and continuing for an appreciable period of time thereafter, the City of Toledo was not afforded with adequate notice of their bankruptcy so as to satisfy the standard of constitutional due process. Therefore, insofar as it concerns the initial confirmation of the Debtors' plan of reorganization on April 2, 2009, the City of Toledo is not bound by its terms.

It is the Debtors' position, however, that adequate notice of their amended plan was provided to the City of Toledo, thereby making such plan binding upon the City of Toledo when this Court confirmed their amended plan on February 1, 2011. The Debtors' assertion of adequate notice is based on these events: On November 1, 2010, Debtors' attorney certified that he sent notice of the Debtors' amended plan and schedules to the City of Toledo, utilizing the address the City of Toledo provides on the invoices it sends to the Debtors for the remittance of payment. Thereafter, on January 5, 2011, and then one week later, on January 12, the Debtors and the Debtors' attorney respectively communicated to a representative of the City of Toledo the existence of this bankruptcy case.

In this Court's assessment, these attempts to provide notice qualify as measures reasonably calculated to apprise the City of Toledo that the Debtors were attempting to compromise its rights. To be sure, the Debtors did not, as the City of Toledo pointed out, provide notice to the specific address required by regulations promulgated by the City of Toledo. However, this does not make the notice provided by the Debtors defective insofar as it concerns constitutional due process and the binding effect of a Chapter 13 plan. *See In re Daniel*, 107 B.R. 798 (Bankr. N.D. Ga. 1989) (finding that notice sent to IRS at address listed on collection notice was proper and reasonably calculated to apprise the IRS of the pendency of the case). *Lehner v. United States*, 685 F.2d 1187, 1190-91 (9th Cir.1982) (holding that due process is satisfied where notice is mailed to the wrong address if the appellant received actual notice).

Page 10

**In re: Timothy/Pamela O'Connor**
**Case No. 08-36756**

Constitutional due process, as stated, only requires that the notice provided be reasonably calculated to reach the party whose rights are being compromised. Under this standard, sending a bankruptcy notice to the location used by the City of Toledo to receive payments seems a perfectly logical choice. In this regard, it can be assumed that a location charged with handling the receipt of payments – the lifeblood of any business or organization – would be competent and able to handle notices from courts.

For this purpose, businesses and organizations, such as the City of Toledo, are assumed to have "minimal internal safeguards designed to make sure that process reaches the appropriate personnel and action is taken." *Kristin Gourlay v. Sallie Mae, Inc. (In re Gourlay)*, — B.R.— , 2012 WL 589017 (6th Cir. B.A.P. 2012) (addressing whether excusable neglect exists for purposes of setting aside a judgment under Rule 60(b)). Thus, in a situation such as this, where an assertion of a lack of notice is based largely a breakdown in internal communication procedures, this Court has discounted this type of defense, observing:

> while an octopus may have eight legs, it is still the same octopus. As a result, bankruptcy law not only requires, but demands, that companies, whether large or small, have in place procedures to ensure that formal bankruptcy notices sent to an internally improper, but otherwise valid corporate address are forwarded in a prompt and timely manner to the correct person/department. As a consequence, [the creditor]'s defense that its collection efforts against the Debtors were merely the result of a flaw in its internal organizational structure—the argument that the right hand does not know what the left hand is doing—falls on deaf ears.

*In re Perviz*, 302 B.R. 357, 368 (Bankr. N.D.Ohio 2003).

It also cannot be ignored that the noticing requirements of a Chapter 13 plan are not subject to the more stringent servicing requirements which are imposed when bringing an adversary proceeding. *Compare* FED.R.BANKR.P. 2002 (setting forth rules governing general notices to creditors and other parties), and FED.R.BANKR.P. 7004 (setting forth rules governing process, service

Page 11

In re: Timothy/Pamela O'Connor
Case No. 08-36756

of summons, and complaint). *See also In re Hudson*, 260 B.R. 421, 439–443 (Bankr. W.D.Mich. 2001) (discussing the notice requirements under the Bankruptcy Rules and concluding that compliance with those rules results in adequate notice).

In any event, a representative from the City of Toledo acknowledged that it became aware of the Debtors' bankruptcy case on January 12, 2011, when Debtors' attorney contacted the City of Toledo regarding its claim. The Debtors' amended plan, however, was not confirmed by the Court until three weeks later, on February 1. Consequently, the position espoused by the City of Toledo, regarding a lack of notice, is not entirely accurate, with the City of Toledo having had ample time to conduct an investigation of the Debtors' case and file an objection to the Debtors' proposed modification to their plan. No such action, however, was taken.

Moreover, even after the February 1, 2011 confirmation of the Debtors' amended plan, and the City of Toledo formally entering its appearance in this case on February 17, 2011, no action was taken by the City of Toledo to challenge this Court's order of confirmation, such as by filing a Motion for relief from judgment under Rule 60(b).[3] Rather, as indicated by the notices and billing statements sent to the Debtors during the period of March to September of 2011, the City of Toledo simply operated on the assumption that it was not bound by the terms of this Court's order. This is unacceptable as the City of Toledo is not entitled to unilaterally choose what court orders it wishes to follow. In this regard, it is well-settled that judgments and orders issued by a court of competent jurisdiction are presumed valid until proven otherwise. *Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co.*, 137 F.2d 871, 879 (6th Cir.1943).

Notwithstanding, the City of Toledo argues that it is not bound by the terms of the Debtors' amended plan because they "failed to obtain the consent of the City, as a secured creditor." (Doc. No.

---

[3] Made applicable to this case by FED.R.BANKR.P. 9024.

Page 12

In re: Timothy/Pamela O'Connor
Case No. 08-36756

56, at pg. 6). Similarly, the City of Toledo also put forth that its claim is a tax claim, and thus a priority claim entitled to full payment under 11. U.S.C. § 1322(a)(2). *Id.* Both of these positions, however, must be rejected.

First, unlike a Chapter 11 case, where creditors have an opportunity to vote on a debtor's proposed plan of reorganization, a court may approve a debtor's proposed Chapter 13 plan over a creditor's objection so long as the requirements in § 1325 are met. The consent of a creditor, even a secured creditor, is not required. Furthermore, even if this were not the case, and a secured creditor's consent was required to approve a Chapter 13 plan, the City of Toledo cannot be considered a secured creditor or, for that matter, a priority creditor.

The Debtors' amended Chapter 13 plan, as confirmed by the Court, classified the claim held by the City of Toledo as a general unsecured claim. This classification, for those reasons just explained, is binding upon the City of Toledo. This is true even if the classification was done in error.

In the recent Supreme Court decision of *United Student Aid Funds, Inc. v. Espinosa*, it was held that even where it was a legal error to confirm a Chapter 13 plan, on account of the plan seeking to discharge a student-loan debt in contravention to the Bankruptcy Rules which require that an adversary proceeding be brought, did not render the plan provision unenforceable. —— U.S. ——, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010). Instead, the Supreme Court held that the otherwise impermissible plan provision was enforceable so long as the opposing party had notice of the error and failed to object or timely appeal. This case is substantially similar.

As already pointed out, the City of Toledo received reasonable notice of the Debtors' proposed treatment of its claim as an unsecured, nonpriority debt in time to object to such treatment. However, no objection was timely filed by the City of Toledo prior to the confirmation of the

Page 13

In re: Timothy/Pamela O'Connor
Case No. 08-36756

Debtors' amended plan, despite the passage of almost three weeks between the time the City of Toledo acknowledged having had notice of the Debtors' bankruptcy case and the confirmation of the Debtors' amended plan. Moreover, as also just discussed, even after the City of Toledo entered its formal notice of appearance in this case, it did not take any prompt action to challenge this Court's order confirming the Debtors' amended plan. To this end, the Supreme Court in *Espinosa* pointed out that deficiencies in a Chapter 13 plan do not "provide a license for litigants to sleep on their rights." 130 S.Ct. at 1381.

In sum, the Court finds that the City of Toledo had adequate notice of this Court's order confirming the Debtors' amended Chapter 13 plan so as to be bound by its terms under § 1327(a). Consequently, those attempts made by the City of Toledo to unilaterally collect on its claim, as represented by the notices and collection letters sent to the Debtors between March and September of 2011, were contemptuous acts.

Based upon its contemptuous conduct, the Debtors seek an award of $5,000.00 for their actual loss, plus attorney fees, and $10,000.00 for punitive damages. (Doc. No. 54). As it regards their request for punitive damages, however, it would appear that the Bankruptcy Code bars such an award against the City of Toledo, as a governmental entity. Section 106(a)(3) provides, *inter alia*:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>
> > (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, *but not including an award of punitive damages*.

(emphasis added). On the other hand, this provision envisions that a monetary judgment may be entered against the City of Toledo.

Page 14

In re: Timothy/Pamela O'Connor
Case No. 08-36756

As sought by the Debtors, a party injured by another's contemptuous conduct may be awarded compensatory damages, including both actual damages and attorney fees. *Taco Ed's, Inc. v. State Bank and Trust*, 63 B.R. 913, 931 (Bankr. N.D.Ohio 1986). Whether such an award should be made is left to the sound discretion of the Court, with due allowance afforded to the egregiousness of the contemptuous conduct and the need to compel or coerce compliance with the court's order. *Id.*; *Sheet Metal Workers v. EEOC*, 478 U.S. 421, 443, 106 S.Ct. 3019, 3033, 92 L.Ed.2d 344 (1986).

In this matter, the Court finds an award of damages to the Debtors, including an award of attorney's fees, to be appropriate. Of import, the contemptuous conduct of the City of Toledo was not an isolated incident, but instead involved a continuous pattern of wrongfully billing the Debtors. Particularly problematic, the City of Toledo threatened to disconnect the Debtors' water service, a situation which if it were to have occurred, would have deprived the Debtors of a basic necessity. *See* 11 U.S.C. § 366(a) (affording special protections to debtors for utility services).

At this time, however, the Court does not have sufficient evidence before it to make a determination as to the Debtors' actual damages. Nor, does the Court have sufficient information to make a determination as to an appropriate award of attorney's fees. Accordingly, the Court will schedule an evidentiary hearing at which time the Debtors may present evidence of their damages, including their attorney fees.

### Objection to the City of Toledo's Proof of Claim

The City of Toledo seeks the allowance of its amended claim in the amount $654.05. (Cl. No. 20). As consideration for this claim, the City of Toledo set forth that it constituted water services extended to the Debtors for the prepetition period of June 14, 2008 through December 12, 2008. *Id.* On November 7, 2011, the Debtors objected to the amended proof of claim, contending that they did not owe the arrearage. (Doc. No. 70).

Page 15

In re: Timothy/Pamela O'Connor
Case No. 08-36756

The Bankruptcy Code provides that any "creditor . . . may file a proof of claim." 11 U.S.C. § 501(a). The purpose of a proof of claim is to alert the court, trustee, and other creditors, as well as the debtor, to claims against the estate. *Adair v. Sherman*, 230 F.3d 890, 896 (7th Cir.2000). A timely filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a).

If, as here, an objection to a proof of claim is made, paragraph (b) of § 502 directs that a court is to determine the amount of the claim as of the date the petition was filed. Thereafter, it is provided that a court "shall allow such claim . . . except to the extent that any of the exceptions set forth in paragraph (b) are applicable, including that such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]" 11 U.S.C. § 502(b)(1).

As an evidentiary matter, Bankruptcy Rule 3001(f) provides that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." The effect of this provision is to prevent the objector from standing on only their objection, by requiring the objector to come forth with evidence to defeat a properly filed proof of claim. *In re Samson*, 392 B.R. 724, 728 (Bankr.N.D.Ohio 2008). Such evidence must be sufficient to demonstrate a true dispute and must have probative force equal to the contents of the claim. *In re Gurley*, 311 B.R. 910, 915–16 (Bankr.M.D.Fla.2001). If the party objecting to a proof of claim is able to overcome the *prima facie* validity afforded to the proof of claim under Bankruptcy Rule 3001(f), the burden then shifts to the claimant to prove the validity of its claim by at least a preponderance of the evidence. *Tracey v. United States (In re Tracey)*, 394 B.R. 639 (B.A.P. 1st Cir. 2008).

When set within this evidentiary framework, it is first observed that during the period surrounding their bankruptcy filing, the Debtors were paying their ongoing obligations to the City of Toledo during the ordinary course. Importantly, for this purpose, the billing statements issued by

Page 16

In re: Timothy/Pamela O'Connor
Case No. 08-36756

the City of Toledo for the billing cycles immediately preceding the Debtors' bankruptcy filing, and then for the billing cycles immediately following the commencement of this case do not show the accumulation of any arrearage. This is particularly telling given these two facts.

First, the $654.05 arrearage sought by the City for Toledo in its proof of claim equates to at least two, if not three, normal billing cycles for the Debtors, with the Debtors normally averaging for their quarterly water bill a charge of between $200.00 and $400.00. Second, the arrearage sought by the City of Toledo is for a relatively short period of time, June 14, 2008 through December 12, 2008. The question, thus, arises from where did such a large arrearage suddenly appear? Also, why did the City of Toledo not assert the deficiency until almost three years later, on April 21, 2011, when it filed its proof of claim. In this regard, the City of Toledo immediately sought to collect on the $2,033.37 postpetition arrearage once the deficiency was realized.

The accuracy of the billing and invoicing conducted by the City of Toledo is also suspect as illustrated by the following statements issued to the Debtors in just over month: (1) a water bill dated March 2, 2011, showing an amount due of $3,129.94; (2) a water bill dated March 4, 2011, showing an amount due of $1,709.26; (3) a water bill dated March 15, 2011, showing a current charge of $229.64, and a total amount due of $1,938.90; and (4) a "Reminder Notice" sent on April 11, 2011, seeking to collect the sum of $1,794.72. These large discrepancies in its invoicing strongly support the conclusion that the City of Toledo was having difficulties in determining the amount actually owed by the Debtors.

The irregular nature of these billing statements was, moreover, corroborated by the expert witness produced by the City of Toledo who candidly acknowledged that she did not understand all the intricacies of the billing system implemented by the City of Toledo and acknowledged that some inconsistencies could have arisen as the result of a past change in its computer billing system. The

In re: Timothy/Pamela O'Connor
Case No. 08-36756

Court also cannot overlook that the City of Toledo initially installed its new meter reader backwards at the Debtors' residence.

For these reasons, it is the conclusion of this Court that not only have the Debtors refuted the *prima facie* validity afforded to the proof of claim filed by the City of Toledo, but that the City of Toledo has failed to establish the validity of its claim. Accordingly, the proof of claim filed by the City of Toledo will not be allowed.

Accordingly, it is

**ORDERED** that the Motion of the Debtors, Timothy and Pamela O'Connor, to find the City of Toledo, Department of Public Utilities, in Contempt, be, and is hereby, GRANTED.

**IT IS FURTHER ORDERED** that, consistent with this decision, an evidentiary hearing to assess damages, including attorney fees, against the City of Toledo, Department of Public Utilities, is hereby set for Thursday, April 26, 2012, at 11:30 A.M. in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.

**IT IS FURTHER ORDERED** that the Debtors' objection to amended claim number 20, in the amount of $654.05, as filed by the City of Toledo, Department of Public Utilities, is hereby Sustained and that such claim is hereby Disallowed.

Dated: March 7, 2012

_____
Richard L. Speer
United States
Bankruptcy Judge

Certificate of Service

    This certifies that a copy of the foregoing Decision and Order has been sent this 7th day of March, 2012 to the following parties by U.S. Postal Service

Joyce Anagnos
City of Toledo Department of Law
c/o Department of Public Utilities
420 Madison Ave., Ste. 100
Toledo, OH 43604

Gordon R. Barry
420 Madison Ave
1010 Ohio Bldg
Toledo, OH 43604

Pamela S. O'Connor
6841 Greentree Ln
Maumee, OH 43537

Timothy P. O'Connor
6841 Greentree Ln
Maumee, OH 43537

City of Toledo Department of Public Utilities
420 Madison Ave.
Suite 100
Toledo, OH 43667

John P. Gustafson
Office of the Chapter 13 Trustee
316 N. Michigan St.
#501
Toledo, OH 43604

_____
Deputy Clerk